## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 15-cr-245-WJM-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    **MATTHEW HOLT,**
2.    JORDAIN LARSEN,

      Defendants.

---

### PLEA AGREEMENT

---

The United States of America, by and through Judith A. Smith, Assistant United States Attorney, and defendant, MATTHEW HOLT, personally and through counsel, David E. Johnson, submit the following Plea Agreement.

### I. PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties understand that any recommendations that a particular sentence or sentencing range be imposed pursuant to this plea agreement are not binding on the court. Because the government is agreeing to dismiss counts of the Indictment as to this defendant, the defendant will be permitted to withdraw his plea of guilty if this Court rejects this plea agreement pursuant to Rule 11(c)(1)(A) and (c)(5) of the Federal Rules of Criminal Procedure.

1



A. **Defendant's Obligations**

    1. **Counts of Conviction**

The defendant agrees to waive Indictment and plead guilty to all three counts in

the ~~Superseding~~ Information Pertaining to Defendant Matthew Holt, all of which charge

a violation of 18 U.S.C. § 2251(a) – Production of Child Pornography.  The defendant

also agrees to admit the Forfeiture Allegation contained in that document.

    2. **Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the

sentence, including the manner in which that sentence is determined.  Understanding

this, and in exchange for the concessions made by the government in this agreement,

the defendant knowingly and voluntarily waives the right to appeal any matter in

connection with this prosecution, conviction, or sentence unless it meets one of the

following criteria: (1) the sentence of imprisonment exceeds the combined statutory

maximum of all counts; or (2) the sentence exceeds the advisory guideline range that

applies to a total offense of 51; or (3) the government appeals the sentence imposed.  If

any of these criteria apply, the defendant may appeal on any ground that is properly

available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this

prosecution, conviction, or sentence in any collateral attack (including, but not limited to,

a motion brought under 28 U.S.C. § 2255).  This waiver provision does not prevent the

defendant from seeking relief otherwise available in a collateral attack on any of the

following grounds: (1) the defendant should receive the benefit of an explicitly

retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant

2

was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

3. **Defendant's Abandonment of Right, Title, and Claim to Seized Property**

The United States of America and the defendant hereby agree that any property subject to forfeiture pursuant to 18 U.S.C. § 2253, seized from the defendant, and currently in the custody and/or control of the Federal Bureau of Investigation FBI was properly seized and that such property constitutes evidence, contraband, or fruits of the crimes to which the defendant has pleaded guilty.  As such, the defendant hereby relinquishes all claims, title, and interest the defendant has in such property, specifically:

    a.  White Nokia cell phone
    b.  8 CDs/DVDs
    c.  Vivitar digital camera with SD card
    d.  Nikon Coolpix 4600 digital camera with SD card
    e.  Fuji Film Finepix AX560 digital camera with SD card
    f.  Fuji Film Finepix S2940WM digital camera with SD card
    g.  LG TMobile cell phone
    h.  HTC TMobile cell phone
    i.  Maxell Adapter containing 2GB microSD card
    j.  Asus Nexus Tablet
    k.  Samsung Galaxy S4 cell phone with cracked screen
    l.  Laptop Computer Dell Inspiron (P28F) 4DLVDW1
    m.  Laptop Computer Dell Inspiron (P28F) 4DLVDW1
    n.  Laptop Computer ASUS Q500A DINOAS17359902
    o.  Laptop Computer Dell Experian 3520 HCZ6BV1
    p.  Tablet (Mobile Device) Verizon Ellipsis 7 (QMV7A) IVVW7D7DNJYDRSDQ
    q.  Cell Phone w/Black Case Samsung Galaxy S4 (SCH-I545) IMEI: 990004382179269
    r.  Cell Phone w/Black & Blue Case Samsung Galaxy S3 (SCH-I535) IMEI: 990003435878711
    s.  External Hard Drive, Seagate NAILABL9
    t.  Internal Hard Drive, (40GB) Toshiba MK4026GAX 85IE2840T
    u.  Laptop Computer, ACER KAWGO LXPGX02005950334C41601
    v.  Laptop Computer, Toshiba
    w.  Cell Phone w/Pink Case Samsung Galaxy Note 3 (SM-N900V) IMEI: 990004498432156

    x.   Desktop Computer, Dell Dimension B110 7T65WB1

to the United States of America with the understanding and consent that the FBI, or other appropriate agency, is to destroy the property described above forthwith without further obligation or duty whatsoever owing to the defendant or any other person.

As part of the plea agreement in this case, the defendant hereby states that he voluntarily abandons all right and claim to this property.

### 4.  **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees, or elsewhere.  The assets to be forfeited specifically include all of those items listed in paragraphs a-x in the above section.  The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.  The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

### B.  **Government's Obligations**

#### 1.  **Dismissal of/Additional Charges**

If the defendant enters an unconditional plea of guilty to the Superseding

4

Information and otherwise fulfills all obligations outlined above, and at the time of sentencing, the government will move to dismiss the counts in the original Indictment pending against him in this case and agrees not to charge the defendant with any other violations of law now known to the United States Attorney's Office for the District of Colorado.

### 2. Acceptance of Responsibility

If the defendant engages in no conduct that otherwise implicates § 3C1.1, the government agrees that a 3-point reduction in the offense level for acceptance of responsibility, pursuant to § 3E1.1, is appropriate and agrees to make the appropriate motion at sentencing.

### C. Withdrawal from Plea Agreement

The parties stipulate and agree that the government may unilaterally withdraw from this Plea Agreement under any of the following circumstances:  1) if the defendant does not plead guilty to all three counts of the Superseding Information; 2) if the Court does not accept the defendant's guilty plea; 3) if the defendant successfully withdraws his plea, either in the district court or on direct or collateral appeal; 4) if the defendant, at any time after judgment is entered, obtains dismissal, reversal or remand of the count(s) of conviction for any reason; or 5) if the court rejects this Plea Agreement (or any part thereof), either before, during, or after sentencing.

### II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offenses to which this plea is being tendered, the crime of Production of Child Pornography, 18 U.S.C. § 2251(a), are as follows:

*One*:  That the defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in, or had a minor assist any other person to engage in sexually explicit conduct;

*Two:*  That the defendant acted with the purpose of producing a visual depiction of such conduct; and

*Three*:  That the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, or that the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or that the visual depiction was actually transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.[1]

"Minor" means any person under the age of eighteen years.[2]

"Child pornography" is defined as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.[3]

"Sexually explicit conduct" means actual or simulated:

1.      sexual intercourse, including genital-genital, oral-genital, anal-genital, or

---

[1] 18 U.S.C. § 2251(a); Fifth Circuit Criminal Pattern Jury Instruction 2.82A [modified].  The Tenth Circuit does not have a pattern instruction on this crime.
[2] 18 U.S.C. § 2256(1).
[3] 18 U.S.C. § 2256(8)(A).

2.      oral-anal, whether between persons of the same or opposite sex; or
2.      bestiality; or
3.      masturbation; or
4.      sadistic or masochistic abuse; or
5.      lascivious exhibition of the genitals or pubic area of any person.[4]

### III. STATUTORY PENALTIES

Based on the defendant's criminal history known at this time, the applicable maximum statutory penalty for each violation of 18 U.S.C. § 2251(a) is not less than 15 years imprisonment, not more than 30 years imprisonment, not more than a $250,000 fine, or both.  18 U.S.C. § 2251(a).  Pursuant to 18 U.S.C. § 3583(k), because the defendant is pleading guilty to violating 18 U.S.C. § 2251(a), the term of supervised release is not less than 5 years and up to a term of life.  Defendant will also be required to pay a $100 special assessment fee for each count.

The parties do not believe the following provisions are applicable, but if the defendant has been previously convicted under Chapters 110, 71, 109A, 117, or under 18 U.S.C. § 1591, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the penalty for a violation of 18 U.S.C. § 2251(a) is not less than 25 years nor more than 50 years imprisonment, not more than a $250,000 fine, or both; with two such convictions, the penalty for a violation of 18 U.S.C. § 2251(a) is not less than 35 years nor more than life imprisonment, not more than a $250,000 fine, or both.

---

[4] 18 U.S.C. § 2256(2)(A).

## IV. <u>COLLATERAL CONSEQUENCES</u>

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, and to serve on a jury. If the defendant is not a United States citizen, this conviction will result in the defendant's removal from the United States once he has completed any sentence of imprisonment.

### A. <u>Future Violations of Supervised Release</u>

If supervised release is imposed, a violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision. If a condition of release is violated, the defendant may be sentenced to up to 3 years without credit for pre-release imprisonment or time previously served on post-release supervision; if the defendant commits any criminal offense under Chapter 109A, 110, or 117, or Title 18, United States Code, Sections 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the defendant shall be sentenced to not less than 5 years and up to the maximum term of imprisonment for the offense, as set forth above.

### B. <u>Registration under the Sex Offender Registration and Notification Act</u>

The defendant has been advised and he understands that under the Sex Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C. § 3583(d), upon his release from prison and as a condition of his supervised release, if any, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life. The defendant understands he must register as a sex offender and must keep the registration current with the state sex offender registration agency in each of the following jurisdictions: where he was

convicted, where he resides, where he is employed, and where he is a student.  The defendant understands that the requirements for registration include providing his name, residence address, and the names and addresses of any places where he is or will be an employee or a student, among other information.  The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status.  The defendant shall comply with requirements to periodically verify in person his sex offender registration information.  The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for violations of applicable state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or imprisonment, or both.  Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

C. **Restitution**

Defendant acknowledges that pursuant to 18 U.S.C. § 2259(a), the Court is required to order restitution for the full amount of the victims' compensable losses as defined at 18 U.S.C. § 2259(b)(3) and(c) as may be proved by the government or stipulated to by the parties.  Defendant will be required to pay restitution for the full amount of the victims' losses to all victims of the offenses to which defendant is pleading guilty.  For purposes of this paragraph, the term "victim" is defined in 18 U.S.C. § 2259(c), and the term "full amount of the victims' losses" is defined in 18 U.S.C. § 2259(b)(3).  Defendant further understands the amount of loss sustained by each

9

victim will be determined during the course of preparation of the presentence investigation report.

Defendant acknowledges that the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source.  Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims.  Defendant understands full restitution will be ordered regardless of defendant's financial resources.  Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea.  Defendant further agrees to comply with any restitution order entered at the time of sentencing.  Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate. Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.  Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

## V.  STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense(s) of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations.  To the extent the parties

10

disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein, which do not contradict the facts to which the parties have stipulated, and which are relevant to the guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4, 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision.  In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information."  § 6B1.4 Comm.

The parties stipulate that the government's evidence would be:

On May 12, 2015, Denver Federal Bureau of Investigation (FBI) was contacted by Westminster Police Department (WPD) for assistance with a child exploitation investigation.  SA Tina Fourkas and SA Nick Vanicelli met with Detective Brian Adams of the WPD the next day. They were informed that the Larimer County Sheriff's Office had downloaded child pornography using peer to peer software on April 7, 2015 from a residence in Westminster, Colorado.  One of the images they downloaded was entitled "baby*** HOTEST MOM - this is the ultimate preteen perversion.jpg."  The image is of an adult female performing oral sex on a very young prepubescent child.

A state search warrant was executed at that residence on May 7, 2015.  Living at the residence was Jordain Larsen, and her live-in boyfriend, Matthew Holt, the defendant.  Also living there were two minors, a 2-year-old boy (Minor #1) and girl under the age of 8 (Minor #2). It was later determined that the two had contact with a third

11

child, a 2-year-old boy (Minor #3).

Computers, electronic media and cellular telephones were seized during the search. None of the seized devices, and none of the cell phones used by either Holt or Larsen at any time were manufactured in Colorado. Shortly after the search, WPD previewed the contents of Holt's laptop and discovered thousands of images and videos of child pornography. In addition, WPD discovered images on Holt's cell phone revealing Holt using Minor #1 to produce child pornographic images and videos at the Westminster residence. It was later determined that Larsen used Minor #2 to produce child pornographic images and that defendant had used Minor #3 to produce child pornographic images and videos.

Immediately upon discovery of the evidence of the produced child pornography, WPD investigators attempted to locate Holt to interview him, but they learned Holt had packed up his belongings and left. A federal complaint was sought and obtained on May 14, 2015, and after a brief search, Holt was located the next day in Fort Collins, Colorado. He was arrested and the agents conducted a videotaped interview of him after he waived his *Miranda* rights. During that interview, the defendant stated that he began collecting child pornography in approximately 2005. He stated that he downloaded it after using search terms such as "mom boys," "boys," and "boys with mom." He stated that he would sometimes watch child pornography with Larsen. The government did not locate forensic evidence corroborating this statement. During her forensic search of the devices seized from Holt and Larsen's residence, SA Fourkas found images of child pornography that Larimer County had downloaded from Holt's computer, including the "baby" image described above. It also revealed that Holt's

12

computers and a Seagate hard drive contained several peer to peer software sharing programs such as Shareaza, Limewire, Frostwire, and eMule.  SA Fourkas found the "baby" image in a "shared" Shareaza folder on the hard drive.  She also found thousands of images and videos involving children that Holt had collected from the Internet.  SA Fourkas chose a selection of 3,000 of these images as clearly depicting prepubescent children engaged in sex acts or the lascivious display of their genitalia. Most of these images were likewise in that shared folder.  She found hundreds more in other devices found in the residence.  Holt also stated during his post-*Miranda* interview that he knew he was sharing images of his child pornography with others.  Among them were images and videos depicting sadomasochistic sexual conduct involving children, including the oral rape of what appears to be a drugged prepubescent boy.

SA Fourkas also found a file on Holt's laptop that contained a "Shareaza" profile. The metadata reflected the file was created on December 19, 2014, and was modified on April 29, 2015.  It reads:  "I have a two year son. We both like to Skype with other boys. A few rules a [sic] have: You must have a boy or girl between the ages of 2-10. You must be willing to Skype. I would prefer a woman but I will consider a man. I will NOT do Skype unless you have a child between the ages I stated above. I would also like to meet a pedo mom that has kids, and might be interested in a relationship 20-28 that wants more kids. Message me if you're interested."  Holt was shown a printout of the profile and he stated that he had drafted it.  On the devices, particularly on Holt's laptops, a cell phone, and a Seagate hard drive, SA Fourkas also found hundreds of produced child pornography images and videos, mostly of Minor #1.  She also found images of child pornography depicting Minors #2 and #3.  Most of these images were

13

stored on the Seagate in a folder entitled "my stuff," but SA Fourkas found them on many other devices as well, including 150 images on Holt's cell phone.

Holt stated he used the Seagate hard drive to store child pornography images and videos, including those that he and Larsen produced of Minor #1 and #2. The devices contained virtually no adult pornography aside from some pornographic pictures of Larsen that were found in a folder entitled "Junk" on Holt's laptop.

Holt stated that he and Larsen had met in March, 2014 on an Internet dating website when he lived in Florida and she was living in Westminster, Colorado. He stated that he visited Larsen a couple of times in the summer before he moved to Colorado to live with Larsen in August, 2014. He stated that before he moved in, he and Larsen often used their cell phones to exchange text messages and images.

Forensic review of the Seagate also revealed that on May 17, May 25, May 27, and August 7, 2014, the defendant was watching Larsen sexually abuse Minor #1 via a live video feed on the Internet, and Holt recorded it using his cell phone camera. Larsen and Holt were using Skype, a webcam/video program that streams video over the Internet. They also used Skype's texting function during these sessions to communicate. In all, there were eight such videos. The specific dates that these videos were created is reflected in the first eight digits of the file names. Those show the year, month and date Holt recorded the live sessions. Holt's face and body is also seen on the computer monitor in a small box at the bottom of the computer screen. They also have sound. Larsen and Holt can be heard talking. Holt can also be seen and heard masturbating during these sessions.

14

The Skype videos, all containing Minor #1, are described as follows—a portion of the end of each file name has been redacted:

- 20140517_****.mp4 – Larsen bends Minor #1 over to expose his anus and penis to the camera.  Holt and Larsen can be heard talking to each other.

- 20140517_***.mp4 - Larsen is depicted fondling Minor #1's penis.  Minor #1 is nude on bed and appears to be sleeping.

- 20140525_**.mp4 - Minor #1 is shown lying on a bed with Larsen.  His penis is exposed.  Larsen is shown fondling Minor #1's penis and genitals.  At one point, Minor #1 attempts to roll away.  Larsen pulls him back to her and spanks his bare bottom.  She continues to fondle his genitals.

- 20140527_0116**.mp4 - Larsen is shown on a bed with Minor #1.  Larsen pulls out her breast and places Minor #1's hand on her breast.  Larsen then fondles Minor #1's penis

- 20140527_0119***.mp4 - Minor #1 is nude and on a bed with Larsen.  Minor #1's penis is exposed.

- 20140527_0126**.mp4 - Minor #1 nude on a bed with Larsen.  Larsen is seen fondling his penis.

- 20140527_0128**.mp4 - Minor #1 nude on bed with Larsen.  Larsen is seen fondling his penis.

- 20140807_0129**.mp4 - Minor #1 is nude on bed with Larsen, who is partially nude with her breasts visible.  Larsen is shown rubbing Vaseline on Minor #1's anus and she partially penetrates his anus with her finger.  She also fellates Minor #1.

In addition to these videos, during the forensic review of the devices, SA Fourkas found corresponding Skype text message sessions on both Holt and Larsen's laptops that matched the dates of the above video recordings. The content of these discussions also mirror the activities depicted in the videos.  For example, during the nearly 30 minute video session on May 25, Larsen states:  "enjoy looking at your boy . . . enjoy it . . . just have fun . . . cum on him."  Holt responds: "I wish my dick was rubbing on his." Larsen responds: "sorry he got mad." This is the same video in which Larsen is seen

spanking Minor #1 when he rolls away from her.   On August 8, Larsen notes that a "little boy" penis does not "react" the same as a man's, and that it just "flops around." She also complains that she "got some Vaseline in my mouth" from fellating Minor #1. She states that Minor #1 was rubbing the Vaseline over his "area for you."  Holt responds: "He's getting ready for me lol."  Larsen responds: "he is. . I can't wait until he realizes your [sic] not leaving.. other then [sic] while you work."

Holt said that in June, 2014 before he moved to Colorado, he and Larsen met up in Colorado Springs, Colorado along with Minors #1 and #3.  It was later confirmed that trip occurred during June 29th and 30th, 2014.  He said that one night Larsen was stroking Minor #1 in a sexually suggestive way.  He said she asked him to get in bed with her and Minor #1.  He said they began watching a children's movie and Larsen continued touching Minor #1 in a sexually suggestive way. He stated that Larsen asked him to have sex with her, he stated he refused.  He stated that Larsen left the room and said, "I'll leave him for you."

During her review of the Seagate hard drive, SA Fourkas found several images and videos that were created on June 29th and June 30, 2014.  Some of the videos have sound.   In six of these videos, Holt is depicted inserting his penis into Minor #1's diaper; he is also seen rubbing his penis against Minor #1's anus and is either attempting to insert or perhaps partially inserting his penis into Minor #1's anus.

After that Colorado Springs trip, Holt returned to his home in Florida. He said that Larsen "used the kids" to lure Holt to Colorado from Florida.  He stated that in texts between him and Larsen, that Larsen offered that he could "have" Minor #1 if Holt moved to Colorado.  He stated that Larsen took naked pictures of Minors #1 and #2 and

texted them to Holt on his cell phone to get him sexually aroused.  After Larsen was arrested and waived her *Miranda* rights, Larsen confirmed that she took such pictures and sent them to Holt via text message.

Text messages were recovered from Holt's cell phone.  On it, on July 1, 2014, two days after the Colorado Springs trip, Holt said to Larsen: "maybe I should get castrated."  Larsen responds:  "please dont. [sic] I'm sorry.  Tell me how [Minor #1] let you in the back door."  Holt responds in detail how he anally penetrated Minor #1 and ejaculated.  Larsen responds: "wow."  Holt says that he did not hurt Minor #1 and that he was "sorry."  Larsen replies:  "No.  Its not that im surprised he went so far [sic]."  On July 21, 2014, Holt tells Larsen that Minor #1 "better be naked when I get there."  Larsen responds: "He will once we are home lol. . . Lol.. he's waiting for you . . . and kiss his cute butt...Ooo . . slowly kiss his penis...I can't 'give' you [Minor #1] until your here [sic]."  She asks if she can again "help" Holt with Minor #1 because "I enjoy it more when you let me help you with Minor #1."  She states "Id [sic] love that . . . you love having both of us . . . I loved it soooo much."  They also text about trading pictures.

During his interview, Holt was shown an image of a hand with distinctive nail polish later determined to be Larsen's fondling Minor #1's genitals.  Holt stated this was an example of the images Larsen took of her sexual activity with Minor #1 and texted to him while he was in Florida or "on the road" as a truck driver.  Larsen likewise stated to SA Fourkas and Vanicelli that she had taken that image.

Review of both Holt and Larsen's laptops and phones recovered from their Westminster residence confirmed that during Skype video and text sessions as well as in other text messages, Larsen offered Minors #1 and #2 to Holt for sex.  For example,

during one of the Skype sessions, Larsen says to Holt via Skype text message: "[Minor #2] is waiting in her undies for you."[5]

Holt stated that once he moved to Colorado in mid-August 2014 (which was after the August 8, 2014 Skype session), he became a primary caregiver for Minor #1, and that he cared for Minor #2 a couple of days per week.  Holt stated that once he moved to Colorado, he and Larsen both engaged in sexual activity with Minor #1.  He stated he engaged in oral sex with Minor #1 and that he also fondled Minor #1's genitals.  He stated that he took pictures of the activity with camera phones.  He stated during the interview that he did not anally penetrate Minor #1; however, as described above, SA Fourkas found images on the Seagate showing defendant's penis either attempting to or perhaps partially penetrating Minor #1's anus, and Holt described it to Larsen in text messages as detailed below.

Holt stated Larsen also used a cell phone to take images of Holt engaged in sexual activity with Minor #1 after Holt moved to Colorado.  For example, during the interview, Holt was shown a picture of Holt lying on his back in bed while holding a camera phone pointed at his genitals.  The image was taken by a second camera a few feet from Holt.  Minor #1 is depicted in the image fondling Holt's erect penis.  Holt stated that Larsen took that picture.  Larsen also stated that she took that picture.

Holt stated that Larsen took pornographic pictures of Minor #2 using her cell phone to "bring her into it."  Holt said that he stored these images produced from his and Larsen's cell phones onto the Seagate external hard drive where SA Fourkas later found them.  The two also continued to text about their sexual activity with the minors.

---

[5] The government has no direct evidence of the defendant engaging in sexual contact with Minor #2.  The defendant denies having sexual contact with Minor #2.

On December 8, 2014, Larsen texts to Holt: "I'll have [Minor #1] for you tonight and I'll work on getting [Minor #2] for you tomorrow." On December 17, 2014, Holt texts Larsen to say: "give [Minor #1] a kiss for me, and a pat on the ass. I can't wait to fuck him again."

Review of Holt's Seagate hard drive ultimately revealed that between May and December of 2014, Holt and Larsen used Minor #1 to produce hundreds of child pornography images and videos. During that same time frame, Holt used Minor #3, and Larsen used Minor #2 to produce child pornography images of those children. In total, just in the allocated space of the Seagate hard drive, SA Fourkas located approximately 390 unique child pornography images of Minors #1, #2 and #3 that Holt or Larsen created. She found approximately 22 child pornography videos of the children. In the deleted space of the hard drive, SA Fourkas found approximately 180 more such images. In them, Holt is seen fondling, rubbing his penis on Minor #1's body, including his anus, either attempting to annually penetrate or perhaps partially penetrating Minor #1's anus, or otherwise engaged in sexual acts with Minor #1. In others, Larsen is seen fondling Minor #1's genitals, fellating him, or displaying his genitals for the camera. The approximately 590 produced child pornography images and videos that SA Fourkas recovered from the Seagate hard drive were created between May 10, 2014 and December 14, 2014. SA Fourkas also found another 150 child pornographic images of Minor #1 that either Holt or Larsen had produced during that same time frame.

For example, SA Fourkas located a video made on August 19th, 2014, with the file name 20140819_**.mp4. It is over 13 minutes in length. In it, Holt and Minor #1 are nude. Holt can be seen (and heard) rubbing his penis against Minor #1's anus. He then

puts Minor #1 between his legs on his lap, and Minor #1 fondles Holt's penis.  Holt is heard calling Minor #1 by name as well as moaning and giggling.  In another video, which is 5 minutes long and was made on August 29, 2014, Holt is seen rubbing Vaseline on Minor #1's anus, then he penetrates Minor #1's anus with his finger and either attempts to or partially penetrates his anus with his penis.  In a video with sound created on September 15, 2014, Minor #1 pushes Holt away with feet when Holt rubs his penis against Minor #1's penis and anus.  Then, Holt begins fondling Minor #1's penis with hands—Minor #1 says, "Stop - please" and covers his penis with both hands.

As for Larsen's additional videos and images of Minor #1, in a video recorded on June 6, 2014 with sound, Minor #1 is nude.  Larsen can be heard talking to him while the camera focuses in on his genitalia.  She can be heard spanking him at the end of the video.  In another made on June 16, 2014, Minor #1 is nude from the waist down.  Larsen's hand is seen rearranging Minor #1 to show his genitalia and spreading open Minor #1's anus in a close-up. In a video with sound recorded on June 19, 2014, Minor #1 is depicted clothed.  He is holding, and the viewer can hear the sound of, a battery-powered pink vibrator in Larsen's vagina.  Larsen can be heard giggling and talking to Minor #1.  Larsen recorded all of these videos with a cell phone.  They were then either texted or given to Holt who ultimately stored them on the Seagate hard drive.

SA Fourkas also located a child pornography video on the Seagate hard drive depicting Minor #1 and Minor #3 as well as several still images.  The video, with sound, was filmed on October 4, 2014.  Minor #3's parents confirmed that Minor #3 was in the care, custody and control of Holt and Larsen overnight on October 4, 2014.  They also reported that Larsen posted about her and Holt's time that night with Minor #3 on her

Facebook page.  In the video, both Minor #1 and #3 are nude in a bathtub.  Holt's erect penis is visible at times in the video and he is seen and heard masturbating in front of the boys.  At one point, Minor #1 stands up and grabs Holt's penis. As Holt is heard talking to the boys, Minor #1 is seen trying to spread Minor #3's legs and trying to grab Minor #3's genitals.

In the text messages from Holt and Larsen's phone, Larsen and Holt discuss sexual activities with Minors #1 and #2, and they discuss trading images with one another.  In one exchange on April 19, 2015, Holt says:  "I was hoping I would get to try with [Minor #2] this weekend . . . she's not going to sleep in the same bed with me. . . I've just been thinking about what it feels like inside her.  I know I won't find out." Larsen responded: "I know.  I wasn't thinking when I got her bed."  On the Seagate, SA Fourkas found several child pornographic images of Minor #2 depicting her nude with the photographs' focus on Minor #2's genitals.  In some, Larsen's hand is visible—her fingers are painted with distinctive nail polish that is also seen in other pictures of her taken at the same time.  Two of these images were created on June 10, 2014, and a third on May 20, 2014.  Holt received them from Larsen and then saved them to the Seagate hard drive.

In another Skype chat dated December 31, 2014, Holt is chatting with another Skype user with the username "xxx.cp."  At one point, Holt tells xxx.cp that he "fucked [Minor #1] for over an hour Christmas Eve."  Xxx.cp asks:  "can I see now?"  Holt responds: "you can call now . . I just have a couple minutes though."  They engage in a Skype video session that lasted for approximately six minutes.  After that, xxx.cp says: "thanks," and "I wish you a year full of sexy time with your kiddo ;)"  There are also text

messages between Holt and Larsen's phones that carry into mid-2015 discussing Holt having sex with Minor #1, his desire to have access to Minor #3, and contemplating vaginal sex with Minor #2.  For example, in a text dated April 21, 2015, Larsen is complaining to Holt that he is not having enough sex with her and that he is too focused on the children.  She says she has "done things as part of our agreements . . . I've gotten you [Minor #3] as much as I can and even left the house on numerous occasions so you could have alone time with the kids."  He responds that "I've been asking to try with [Minor #2] for weeks . . . and I'm still waiting."  Law enforcement was unable to locate additional images or videos that post-date December, 2014.

After SA Fourkas located images showing that Larsen had likewise produced images of child pornography of Minors #1 and #2, a federal complaint was sought and obtained.  As described, Larsen spoke with law enforcement after she waived her *Miranda* rights.  During that interview, Larsen stated that she met Holt in March, 2014 on an online dating site.  She said that they communicated for about two weeks online before meeting in Fort Collins.  She stated during that day they had sex in front of Minor #1.  She stated that he left and returned to Florida.  She stated that Holt had visited her a couple of times during the summer of 2014.  She stated he moved into her house in August, 2014.  She stated that during the Skype sessions during their online relationship between May and August 2014 that she had "a couple" of Skype sessions where Holt was able to view the children naked.  She claimed he threatened her to force her to show him the children naked.  Forensic review of the Skype chats reveal no threats.[6]

---

[6] The defendant denies making any threats.

Larsen stated that she allowed Holt to move into her home because he stopped making threats.  When asked about the pictures of Minor #2, Larsen initially claimed that Holt had used her cell phone to take those pictures.  When shown the images with her hand in them, including one of her digitally penetrating Minor #1's anus, Larsen stated that Holt took the picture.  When asked about performing fellatio on Minor #1, Larsen said that while Holt asked her to do it, she "never fully did it...just kissed him between his legs."  However, as described, video recordings of Larsen during Skype sessions show her with Minor #1's penis in her mouth.  When Larsen was asked about why she provided Holt with access to the minors, Larsen replied: "I thought if he touches [Minor #1] when he's young, whatever." When asked about video depicting Holt's sexual activities with Minors #1 and #3, Larsen stated that she filmed Holt with Minors #1 and #3, but that she "looked away" while filming and did not remember the specific activities they had "in the bed."  Larsen also stated that many pornographic pictures were taken with an old cell phone that had broken and had to be returned to the manufacturer.  She stated that she took many pornographic pictures of Minor #1 and #2 with her current cell phone, and that she would then text them to Holt. She would then delete them from her cell phone.  The "broken" cell phone was not returned to the manufacturer.  Instead, SA Fourkas recovered the phone with a cracked screen from Larsen's family after her arrest.  That phone was equipped with an SD card, but it was corrupted and could not be searched.  The new phone that Larsen discussed was also recovered.  However, law enforcement could not search the deleted space of that phone due to its operating system.  Consequently, no images of child pornography were recovered from Larsen's phones.

23

Larsen was asked about the pink vibrator.  She said it was hers and that Minor #1 found it and thought it was a toy because it made noises, vibrated and rotated. Larsen stated she thought it would be a funny picture of Minor #1 playing with the vibrator.  Larsen said that Holt saw the picture and wanted it for himself.

Defendant admits that the offense involved a minor who had not attained the age of twelve years; that the offense involved the commission of a sexual act and sexual contact; and that the offense involved a minor who was in the custody, care, or supervisory control of the defendant, that the offense involved distribution, and that the offense involved material that portrays sadistic or masochistic conduct.  The defendant admits that the offense involved the use of a computer to solicit participation of a minor.

## VI.  ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of sentence in this case is governed by Title 18, United States Code, § 3553.  In determining the particular sentence to be imposed, the Court is required to consider seven factors.  One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission.

In order to aid the Court, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The defendant agrees and consents that facts that determine the offense level will be found by the Court, by a preponderance of the evidence, and that the Court may consider and use any reliable evidence, including hearsay and the facts outlined in the

24

Presentence Report.  The parties further agree that the stipulation of facts in this plea agreement will also be used by the Court in determining the sentencing guideline range.

The parties provide the following estimated guideline range for the Court's consideration pursuant to 18 U.S.C. § 3553(a)(4).  The range and calculation of that guideline range is an estimate only, and the parties are not bound if the probation department determines that a different guideline range applies.  Any estimation by the parties regarding the appropriate advisory guideline application does not limit the positions the parties may take at sentencing on the appropriate sentence for the Court to impose; rather, those limits are set out in Part I of this plea agreement.  The Court may impose any sentence, up to the statutory maximum, regardless of any advisory guideline range computed, and the parties agree that the Court is not bound by any position of the parties.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

To the extent the parties disagree about the estimated guideline sentencing factors, the computations below identify the factors which are in dispute.  § 6B1.4(b).

**Offense Levels**:  The base guideline for each of the three counts is § 2G2.1, and the base offense level for each offense is **32.**  § 2G2.1(a)

**1.  Count One**

25

A. Because the offense involved a minor who had not attained the age of twelve years, there is an increase of **+4** levels.  §2G2.1(b)(1)(A).

B. Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels.  § 2G2.1(b)(2)(A).

C. Because the offense involved distribution, there is an increase of **+2** levels. § 2G2.1(b)(3).

D. Because a computer was used to persuade, induce, entice, a minor to engage in sexually explicit conduct or to solicit participation by or with a minor to engage in sexually explicit conduct, there is an increase of **+2** levels. § 2G2.1(b)(6).

E. The adjusted offense level for Count One is **42.**

2. **Count Two**

A. Because the offense involved a minor who had not attained the age of twelve years, there is an increase of **+4** levels.  §2G2.1(b)(1)(A).

B. Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels.  § 2G2.1(b)(2)(A).

C. Because the offense involved distribution, there is an increase of **+2** levels. § 2G2.1(b)(3).

D. Because the offense involves material that portrays sadistic or masochistic conduct or other depictions of violence, there is an increase of **+4** levels. § 2G2.1(b)(4).

E. Because the defendant was a parent, relative, or legal guardian of the minor, or because the minor was otherwise in the custody, care, or supervisory control of the defendant, there is an increase of **+2** levels.

F. The adjusted offense level for Count Two is **46.**

3. **Count Three**

A. Because the offense involved a minor who had not attained the age of twelve years, there is an increase of **+4** levels.  §2G2.1(b)(1)(A).

B. Because the offense involved the commission of a sexual act or sexual contact, there is an increase of **+2** levels.  § 2G2.1(b)(2)(A).

C. Because the defendant was a parent, relative, or legal guardian of the minor, or because the minor was otherwise in the custody, care, or supervisory control of the defendant, there is an increase of **+2** levels.

D. Because the offense involves the exploitation of more than one minor, there is an increase of **+2** levels.  § 2G2.1(d)(1).

E. The adjusted offense level for Count Three is **42.**

## Multiple Count Adjustment

A. Because offenses under § 2G2.1 are excluded from grouping under § 3D1.2(d), each count of conviction constitutes a separate Group.

B. Because there are two and one-half Units, the offense level for the Unit with the highest adjusted offense level (Count Two, 46) should be increased **+3.**
§§  3D1.1, 3D1.4

C. The combined offense level is **49.**

D. No victim-related, role-in-offense, or obstruction adjustments apply.

## Acceptance of Responsibility Adjustment

A. Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility.  § 3E1.1(a).  Defendant should also receive a decrease in the offense level by **–1** for timely notifying the government.
§ 3E1.1(b).  At sentencing, the government will make the appropriate motion for the one-point reduction.

B. The adjusted offense level is **46.**

## Criminal History Category

A. The parties acknowledge and agree that the estimation regarding Defendant's criminal history is tentative.  Defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court.  Defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment.  Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") I.  § 4A1.1.

## Repeat and Dangerous Sex Offender

A. Because the instant offense of conviction is a covered sex crime, and because the defendant engaged in a pattern of activity involving prohibited sexual conduct, there is an increase of **+ 5 levels**.  The CHC remains at level I.
§§  4B1.5(b)(1), (2).

B. The Total Offense Level is **51.**

27

**Guideline Range**

A.  The guideline range resulting from the estimated Total Offense Level of **51** and the estimated criminal history category of I is **Life** imprisonment.  However, the sentence of imprisonment cannot exceed the statutory maximum penalty for all of the counts when imposed consecutively; therefore, assuming the defendant has no prior convictions for a sexual offense, the total statutory maximum, and guideline range here is **90** years. § 5G1.2 (d).

B.  Pursuant to § 5E1.2, assuming the estimated offense level of 51, the fine range for this offense would be $25,000 to $250,000, plus applicable interest and penalties.

C.  Pursuant to 18 U.S.C. § 3583(k), and § 5D1.2(b)(2), if the Court imposes the term of supervised release, that term shall be at least 5 years but not more than life.

## VII.  ENTIRE AGREEMENT

This document states the parties' entire agreement.  There are no other promises, agreements, (or "side agreements"), terms, conditions, understandings or assurances, express or implied.  In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 02/10/16

_____
Matthew Holt
Defendant

Date: 2/10/16

_____
David E. Johnson
Attorney for Defendant

Date: 2/22/16

_____
Judith A. Smith
Assistant U.S. Attorney