**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 15-cr-245-WJM
*(Civil Action No. 17-cv-1901-WJM)*

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.

**1.    MATTHEW HOLT,**

      Defendant-Movant.

---

**ORDER ADOPTING MAGISTRATE JUDGE'S JULY 9, 2018 RECOMMENDATION,**
**AS MODIFIED, AND DENYING § 2255 MOTION**

---

The Court sentenced Defendant Matthew Holt ("Holt") to 55 years in the custody of the Bureau of Prisons based on his plea of guilty to three counts of producing child pornography.  Currently before the Court is Holt's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (ECF No. 110.)  The Court referred this motion to U.S. Magistrate Judge Nina Y. Wang for a recommended disposition.  (*See* ECF Nos. 111, 125.)  After resolving requests for discovery and similar matters,[1] Judge Wang issued her recommendation on July 9, 2018, recommending that Holt's motion be denied in all respects.  ("Recommendation," ECF No. 145.)  Holt filed a timely objection.  (ECF No. 148.)  The Government filed a response to that objection.  (ECF No. 149.)  Holt then filed a motion to strike the Government's response (ECF No. 152), which is also currently before the Court.  The

---

[1] Holt filed no objections to these orders of Judge Wang.

Government filed no response to the motion to strike.

For the reasons explained below, the Court agrees with Judge Wang that Holt's motion fails in all respects, although the Court's reasoning is at times somewhat different than Judge Wang's. Accordingly, the Court will adopt the Recommendation in full, as modified herein, and deny Holt's motion. The Court will deny Holt's motion to strike as moot.

## I. BACKGROUND

Holt was arrested on May 18, 2015, under a criminal complaint charging violations of 18 U.S.C. § 2251(a), which prohibits production of child pornography.[2] (ECF Nos. 1, 7.) The eventual indictment contained twenty-one counts, thirteen of which were directed at Holt. (*See* ECF No. 13.) Twelve of those thirteen counts charged violations of § 2251(a). The remaining count charged a violation of 18 U.S.C. § 2252A(a)(2), which prohibits distribution of child pornography.

Holt, through counsel, filed a notice of disposition on September 15, 2015. (ECF No. 38.) He chose to accept a plea agreement that, in its final form, was an agreement to dismiss the indictment and to charge Holt through a superseding information that alleged three counts of violating § 2251(a)—to which he would plead guilty. (*See* ECF No. 62 at 1–5.) The Government also agreed not to pursue charges based on any other violations then known to it. (*Id.* at 5.)

After numerous continuances for reasons no longer important, the Court held a change-of-plea hearing on February 23, 2016. (ECF No. 61.) At that hearing, the

---

[2] Whether the statute prohibits production, as opposed to only certain acts leading up to production, is a matter Holt disputes. For the reasons explained in Part III.B, below, Holt is incorrect: the statute prohibits production.

undersigned addressed Holt as follows:

> Q.     Mr. Holt, do you understand that you are under oath
> and that if you answer any of my questions falsely, your
> answers may later be used against you in a separate
> prosecution for perjury?
>
> A.     Yes.
>
> Q.     Do you understand you have the right to remain silent
> and not to answer any of my questions?
>
> A.     Yes.
>
> Q.     Do you give up your right to remain silent in order to
> answer the questions I need to ask you at this hearing?
>
> A.     Yes.
>
> * * *
>
> Q.     Is there anything about the way you feel right now that
> prevents you from understanding what is happening at this
> hearing?
>
> A.     No.

(ECF No. 115 at 4–5.)  The undersigned then announced, "Based on the statements of

the defendant and my observations, I find that he is competent to proceed with this

hearing."  (*Id.* at 5.)

The undersigned then continued his colloquy with Holt:

> Q.     . . . Now, Mr. Holt, have you read and discussed the
> charges to which you will be pleading guilty with your
> attorney?
>
> A.     I have.
>
> Q.     Do you understand the charges to which you will be
> pleading guilty?
>
> A.     I do.
>
> * * *
>
> Q.     . . . Mr. Holt, have you read Court Exhibits 1 and 2

3

[*i.e.*, the plea agreement (now filed at ECF No. 62) and the statement in advance of pleading guilty]?

A.     Yes.

Q.     Have you discussed these documents with your lawyer?

A.     Yes, I have.

Q.     Has your lawyer answered any questions you may have had regarding Exhibits 1 and 2?

A.     Yes, he did.

Q.     And when you signed Exhibits 1 and 2, did you do so voluntarily?

A.     Yes.

Q.     All right.  You've told me you've already reviewed the Plea Agreement, Exhibit 1, and discussed it thoroughly with your lawyer.  So hopefully it won't take too long, but I am going to need to ask you to review to yourself the factual stipulations contained in your agreement at pages 11 through 24.  And let me know when you are done reviewing those allegations.

A.     I am done, sir.

Q.     The record will reflect the defendant took 15 minutes to review the facts in the Plea Agreement.  Mr. Holt, these are the facts the government believes it could prove at trial.  By entering into this Plea Agreement, you are admitting these facts and I will treat them as true for purposes of considering your plea and for purposes of sentencing.

Do you agree that the facts on pages 11 through 24 of the Plea Agreement that you have just reviewed are true?

A.     I do.

Q.     Is there any inaccuracy in these facts that you would like to correct at this time?

A.     No.

Q.     Can you turn to page 6, please, of your Plea Agreement.  One, 2 and 3 are the elements of the offense

that you are pleading guilty to, and this is the statutory legal language of the offense; and you can refer to that, if you would like to, but I would like you to state in your own words what it is that you did with respect to the counts you are pleading guilty to and what brings you in front of me today.

A.     I made pictures and videos depicting sexual images with a device that crossed state lines with two different minors.

Q.     All right.  What were the ages of these minors?

A.     One was a two-year-old and one was eight.

Q.     All right.  And [you] persuaded or in some fashion had these minors engage in sexually explicit conduct?

A.     Yes.

Q.     And you did so for purposes of creating a visual depiction of them engaging in sexually explicit conduct?

A.     Yes.

Q.     And you knew that these visual depictions were going to be transmitted to other states and/or other foreign countries—or foreign countries?

A.     I did.

(*Id.* at 6–8.)

The undersigned then confirmed Holt's willingness to give up the constitutional rights he would enjoy by going to trial, his understanding of the potential maximum sentence, and similar matters.  (*Id.* at 9–16.)  Following Holt's affirmative responses, the undersigned continued:

Q.     Has anyone threatened you or your family in order to force you to plead guilty in this case?

A.     No.

Q.     Are you satisfied with the representation your attorney has provided to you?

A.     Yes.

Q.     Have you understood everything that I have told you
or asked of you today?

A.     Yes.

Q.     Having in mind all that we've discussed regarding
your plea of guilty, the rights you will be giving up and the
maximum sentence you may receive, do you still wish to
plead guilty?

A.     Yes.

(*Id.* at 17.)  The undersigned then made findings on the record consistent with Holt's

answers, and accepted his guilty plea.  (*Id.* at 19–21.)

Holt's sentencing hearing took place on August 17, 2016.  (ECF No. 99.)  The

Court had discretion to sentence Holt to up to 30 years' imprisonment for each of the

three counts of the superseding information, totaling 90 years.  *See* 18 U.S.C.

§ 2251(e).  The Court sentenced Holt to 220 months' imprisonment per count, to run

consecutively, for a total of 660 months (55 years).  (ECF No. 101.)

On August 4, 2017, Holt filed the § 2255 motion currently at issue.  (ECF No.

110.)

## II.  STANDARDS OF REVIEW

### A.     28 U.S.C. § 2255 Standard

"A prisoner in custody under sentence of a court established by Act of Congress

claiming the right to be released upon the ground that the sentence was imposed in

violation of the Constitution or laws of the United States . . . may move the court which

imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C.

§ 2255(a).

Unless the motion and the files and records of the case
conclusively show that the prisoner is entitled to no relief, the

court shall cause notice thereof to be served upon the United
States attorney, grant a prompt hearing thereon, determine
the issues and make findings of fact and conclusions of law
with respect thereto.

*Id.* § 2255(b).[3]  But the requirement for "a prompt hearing" does not mandate an

evidentiary hearing.  Rather, Rule 8 of the Rules Governing Section 2255 Proceedings

states that it is the Court's role, *after* concluding that the motion merits a response from

the Government, to evaluate the need for an evidentiary hearing:

If the motion is not dismissed [under Rule 4 of the same
rules, which implements § 2255(b)], the judge must review
the [Government's] answer, any transcripts and records of
prior proceedings [cited by the parties], and any materials
submitted under Rule 7 [regarding expanding the record] to
determine whether an evidentiary hearing is warranted.

"[The] decision [whether to hold an evidentiary hearing] turns on whether such a hearing

could enable the movant to prove the motion's factual allegations, which, if true, would

entitle the movant to relief."  *United States v. Barrett*, 797 F.3d 1207, 1224 (10th Cir.

2015) (internal quotation marks omitted; alterations incorporated).

District courts are entitled to some latitude with regard to
evidentiary hearings, and the standard is higher than notice
pleading.  District courts are not required to hold evidentiary
hearings in collateral attacks without a firm idea of what the
testimony will encompass and how it will support a movant's
claim.

*United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004) (citation omitted).

---

[3] Holt occasionally argues that the Recommendation should be rejected because Judge
Wang failed to establish that the records of the case conclusively show that he is entitled to no
relief.  (ECF No. 148 at 4, 9.)  Holt misreads the statute.  The "conclusively show" standard
governs whether the Court may dispose of a § 2255 motion without notifying the Government
that the motion has been filed.  Here, the Court notified the Government and ordered it to
respond (ECF No. 113), so the "conclusively show" standard is irrelevant to whether the Court
should adopt Judge Wang's recommendation.

**B. 28 U.S.C. § 636(b)(1)(B) & (C) Standard**

A district judge may refer "applications for posttrial relief made by individuals convicted of criminal offenses" to a magistrate judge for "proposed findings of fact and recommendations for the disposition of [such applications]." 28 U.S.C. § 636(b)(1)(B). "Within fourteen days after being served with [the magistrate judge's proposed findings and recommendations], any party may serve and file written objections to such proposed findings and recommendations . . . ." *Id.* § 636(b)(1)(C). The presiding district judge must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which [timely] objection is made." *Id.* The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

### III. ANALYSIS

Holt submitted a timely and specific objection to the Recommendation. The Court will therefore review the matter *de novo*. At the outset, however, the Court agrees with Judge Wang that an evidentiary hearing is unnecessary. Only one of Holt's arguments raises a potential factual question, but the argument fails even assuming the facts are as Holt asserts. (*See* Part III.C, below.) Accordingly, the Court will resolve Holt's arguments on the papers.[4]

---

[4] The Government submitted a response to Holt's objection (ECF No. 149), which is the target of Holt's motion to strike (ECF No. 152). Holt's argument for striking the response rests on the interplay, or lack of it, between 28 U.S.C. § 636 (governing magistrate judges' powers), Federal Rule of Civil Procedure 72(b), and Rule 10 of the Rules Governing Section 2255 Proceedings. Rule 72(b) allows a party who opposes a magistrate judge's recommendation to file an opposition within 14 days, and then allows other parties to respond to that opposition within another 14 days. However, as Holt points out, the advisory committee commentary to Rule 72(b)'s promulgation in 1983 states that the rule "does not extend to habeas corpus petitions, which are governed by the specific rules relating to proceedings under Sections 2254

## A.      Coercion to Plead Guilty

Many of Holt's arguments, discussed below, rely at least in part on disavowing

the representations he made to the undersigned, under oath, in open court.  He faces a

heavy burden to support this argument:

> [T]he representations of the defendant, his lawyer, and the
> prosecutor at [a change-of-plea] hearing, as well as any
> findings made by the judge accepting the plea, constitute a
> formidable barrier in any subsequent collateral proceedings.
> Solemn declarations in open court carry a strong
> presumption of verity.  The subsequent presentation of
> conclusory allegations unsupported by specifics is subject to
> summary dismissal, as are contentions that in the face of the
> record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Here, Holt attempts to explain himself first by asserting that "defendants are in a

state of shock when haled into court."  (ECF No. 134 at 5.)  Notably, Holt does not say

that *he* was in a state of shock *at his change of plea hearing*, more than nine months

after his arrest and initial appearance.  (See ECF Nos. 3, 61.)  In any event, the

undersigned asked, "Is there anything about the way you feel right now that prevents

you from understanding what is happening at this hearing?"  Holt answered, "No."  The

undersigned then found Holt competent to proceed "[b]ased on the statements of the

defendant and my observations."  (ECF No. 115 at 5.)

Holt goes on to claim that his representations at the change-of-plea hearing

---

and 2255 of Title 28."  In this context, the relevant rule is Rule 10 (of the § 2255 rules), which
states, in full, "A magistrate judge may perform the duties of a district judge under these rules,
as authorized by 28 U.S.C. § 636."  As noted, § 636 permits district judges to refer § 2255
petitions to magistrate judges, and then sets a timeframe for objections.  But § 636—unlike Rule
72(b)—nowhere authorizes responses to objections.  Even so, there is no argument in the
Government's arguably unauthorized response that was not already addressed, at least in
substance, in earlier filings.  Accordingly, the Court has not relied on the Government's
response, and so denies the motion to strike as moot.

"were spoken because [he] believed them to be true AT THAT TIME, and, in many cases, because he was specifically instructed by counsel that he must answer questions from the Court in a certain way or the plea would not be accepted. In other words, counsel was suborning perjury." (ECF No. 134 at 6 (emphasis in original).) The Court does not doubt that Holt's counsel previewed for him the sorts of questions the undersigned would ask, nor that counsel warned Holt that answers inconsistent with admission of guilt could undermine the plea deal. That is part of a criminal defense attorney's role. But substantial and detailed factual allegations are needed before the Court will countenance a claim that counsel suborned Holt's perjury, or, as Holt puts it more dramatically later in his brief, "browbeat[] the petitioner until his will was overborne." (ECF No. 134 at 9.)

Holt does not provide substantial and detailed factual allegations. Instead, he expounds a theory of why a defense attorney might coerce a client into taking a plea deal despite the client's protestations (laziness, heavy caseloads, maintaining a reputation with the prosecutor and the judge as a team player, etc.). (*Id.* at 6–8.) Arguments about motives do not substitute for factual allegations supporting the claim that those motives actually existed and guided counsel *in this case. Cf. Smallwood v. Martin*, 525 F. App'x 669, 674 (10th Cir. 2013) ("The problem with these assertions is that Smallwood fails to deny having tossed a baggy of cocaine or the amount of cocaine. He simply proclaims 'irregularities' and leaves the court to make the connection. While we construe pro se pleadings liberally, our liberality can only stretch so far. As one court said in a Rule 12(b)(6) context, 'when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.' The same holds true for habeas relief." (citation omitted)).

Accordingly, the Court rejects, at the outset, Holt's attempt to disavow his statements under oath at the change-of-plea hearing.  As described above (Part I), the Court thoroughly examined Holt as to his voluntariness, satisfaction with counsel, and so forth.  His current arguments do not rise above "conclusory allegations unsupported by specifics," and so he fails to rebut the "strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).  His statements under oath at the change-of-plea hearing remain undisturbed.[5]

## B.      Ineffective Assistance of Counsel

### 1.      Ineffective Assistance Generally

All of Holt's grounds for relief turn on his defense attorney's alleged failure to take certain actions, thus rendering the attorney assistance he received constitutionally ineffective.  To demonstrate ineffective assistance of counsel, Holt must establish two elements:

1.      *Objective Unreasonableness*: his "counsel's representation fell below an objective standard of reasonableness"; and

2.      *Prejudice*: "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

---

[5] In this light, his claims of browbeating get Holt nowhere.  *See United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996) ("Appellant claims that he was 'hounded, browbeaten and yelled at' by O'Donnell [his attorney] to accept the plea; that O'Donnell collaborated with codefendants' attorneys to force Appellant to accept the plea; and that when Appellant initially refused to acquiesce, O'Donnell called him 'stupid' and 'a fucking idiot.'  While these pressures might have been palpable to Appellant, they do not vitiate the voluntariness of his plea; it was still his choice to make.  Indeed, the thorough exchange between the court and Appellant during administration of the Rule 11 protocol . . . clearly demonstrates that Appellant entered his plea willingly and voluntarily at the time he made it.").

*Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  There is a "strong presumption" that an attorney "render[s] adequate assistance and [makes] all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 689–90.

      2.    <u>Prejudice in the Current Context</u>

To demonstrate prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The Government's response to Holt's § 2255 motion correctly points out that Holt nowhere states in the motion that he would have rejected a guilty plea and gone to trial but for his attorney's errors.  (ECF No. 118 at 9.)  Instead, Holt asked for "a reduction of the sentence; permission to withdraw the guilty plea; vacatur of the conviction; or any other relief to which movant may be entitled."  (ECF No. 110 at 12.)[6] In reply, Holt insists that "[i]t should go without saying that this [*i.e.*, not pleading guilty] would be the choice made by the petitioner. . . .  Of course the petitioner would have gone to trial AND he would have prevailed for the reasons set forth in the grounds of the § 2255 motion."  (ECF No. 134 at 5 (emphasis in original).)

The Court need not hold that the desire to go to trial always "goes without saying" in similar circumstances.  The Court will assume Holt's request for (among other things) "permission to withdraw [his] guilty plea" was also meant as an expression of a desire to go to trial, as confirmed by his later insistence to that effect.  But the Court will likewise hold Holt to this approach, meaning that Holt must show that some foregone argument or strategy "would have led counsel to change his recommendation as to the plea"

_____

[6] The "any other relief" clause is preprinted on the § 2255 form Holt filled out.

because evidence thus obtained or suppressed "likely would have changed the

outcome of a trial" or an argument thus presented "likely would have succeeded at trial."

*Hill*, 474 U.S. at 59.[7]

With these clarifications, the Court turns to Holt's asserted grounds for § 2255

relief.

**C.    Ground One: Ineffective Assistance of Counsel Based on Counsel's Failure
to Challenge 18 U.S.C. § 2251(a) Under the Commerce Clause**

Holt first challenges the constitutionality of 18 U.S.C. § 2251(a), which reads:

> Any person who employs, uses, persuades, induces,
> entices, or coerces any minor to engage in, or who has a
> minor assist any other person to engage in, or who
> transports any minor in or affecting interstate or foreign
> commerce, or in any Territory or Possession of the United
> States, with the intent that such minor engage in, any
> sexually explicit conduct for the purpose of producing any
> visual depiction of such conduct or for the purpose of
> transmitting a live visual depiction of such conduct, shall be
> punished as provided under subsection (e), if such person
> knows or has reason to know that such visual depiction will
> be transported or transmitted using any means or facility of
> interstate or foreign commerce or in or affecting interstate or
> foreign commerce or mailed, if that visual depiction was
> produced or transmitted using materials that have been
> mailed, shipped, or transported in or affecting interstate or
> foreign commerce by any means, including by computer, or
> if such visual depiction has actually been transported or
> transmitted using any means or facility of interstate or
> foreign commerce or in or affecting interstate or foreign
> commerce or mailed.

Given the statute's repeated reference to interstate and foreign commerce, Holt

---

[7] To be clear, the Court does not understand Holt to be asserting that any of his
arguments, if valid, could have led to a better *plea deal*.  Only his Ground Three mentions this
as a potential form of relief.  (ECF No. 100 at 6–7.)  But arguing that counsel was ineffective for
failing to secure a better plea deal is a much more complicated analysis and Holt has never
attempted to satisfy it, particularly the prejudice prong.  *Cf. Missouri v. Frye*, 566 U.S. 134, 144–
49 (2012) (describing the prejudice standard when a defendant misses out on a more favorable
plea deal).

recognizes that Congress viewed this statute as within its power to enact under the Commerce Clause. *See* U.S. Const. art. I, § 8, cl. 3 ("The Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States . . . ."). Holt assumes that Congress may regulate production of child pornography under the Commerce Clause but argues that § 2251(a) does not actually regulate production— and what it *does* regulate (in Holt's view) is beyond Congress's Commerce Clause power. (ECF No. 134 at 10, 16, 26–27.) Holt claims that the statute does not expressly prohibit the act of producing child pornography, but instead only prohibits "employ[ing], us[ing], persuad[ing], induc[ing], entic[ing], or coerc[ing] any minor to engage in . . . any sexually explicit conduct *for the purpose of producing* any visual depiction of such conduct." 18 U.S.C. § 2251(a) (emphasis added). From this, Holt argues that these steps on the path to producing child pornography—that may or may not ripen into actual production—do not themselves have a substantial effect on interstate commerce, and so are beyond Congress's power to regulate, even if Congress can regulate production itself. (ECF No. 134 at 16–30.)

To properly evaluate Holt's argument, it must be kept in mind that he cannot argue directly that § 2251(a) should be struck down. He has brought, rather, an ineffective assistance of counsel claim based on the guilty plea allegedly rendered involuntary due to bad advice. In that light, the Court must construe Holt to be arguing that his attorney performed below an objective standard of reasonableness (*Strickland* prong one) when he allegedly failed to advise Holt to reject the plea deal and instead challenge § 2251(a) on the grounds Holt articulates. Accepting Holt's assertion that he would have followed that advice, he theoretically could suffer prejudice (*Strickland* prong two) because the challenge, if successful, would have knocked out the twelve

§ 2251(a) counts of the indictment, leaving only a single count for violating § 2252A(a)(2) (distribution).  Holt does not explain how he intended to defeat the distribution count, but prejudice of the type needed for a Sixth Amendment ineffective assistance claim still potentially exists because, if he had gone to trial and lost on that one remaining count, his maximum possible prison sentence would have been 20 years, or, if he had relevant prior convictions, 40 years—both of which are less than the 55 years he actually received and the 90 years he could have received under the plea deal.  (*See* ECF No. 13-1 at 1–2.)  *See also Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) ("when the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error," such as failing to make a potentially meritorious motion, then the defendant "must also show that he would have been better off going to trial"); *Glover v. United States*, 531 U.S. 198, 203 (2001) ("any amount of [additional] jail time has Sixth Amendment significance").

However, it is clear as a matter of law that Holt's counsel did not perform below an objective standard of reasonableness (*Strickland* prong one).  The statute cannot bear Holt's construction, and, properly construed, the Tenth Circuit has already resolved the question.

Holt understands that the Tenth Circuit has repeatedly upheld § 2251(a) as within Congress's Commerce Clause authority to enact.  *See United States v. Grimmett*, 439 F.3d 1263, 1271–73 (10th Cir. 2006) (facial challenge); *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1268–73 (10th Cir. 2005) (as-applied challenge); *see also United States v. Humphrey*, 845 F.3d 1320, 1321 (10th Cir. 2017) (rejecting argument that subsequent Supreme Court decisions undermined *Jeronimo-Bautista*), *cert. denied*, 137 S. Ct. 2145 (2017).  These decisions frame § 2251(a) as a prohibition on

production, and this is where Holt believes they go wrong. *See Humphrey*, 845 F.3d at 1322 ("Congress rationally determined that the activity of locally producing child pornography constitutes an essential part of the interstate market for child pornography that is well within Congress' power to regulate." (internal quotation marks omitted; alterations incorporated)); *Grimmett*, 439 F.3d at 1271 (10th Cir. 2006) ("[the statute] prohibits, in pertinent part, the production of child pornography"); *Jeronimo-Bautista*, 425 F.3d at 1272 (describing the statute as regulating "the intrastate production of child pornography"). Holt believes his counsel should have advised him to reject the plea deal and instead pursue an argument that relies on convincing the Tenth Circuit that it— and every other appellate court to consider the matter, as far as this Court is aware— has been fundamentally misreading § 2251(a) for many years.

Holt is correct that § 2251(a)'s first major clause addresses "employ[ing], us[ing], persuad[ing], induc[ing], entic[ing], or coerc[ing] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," but does not prohibit production itself. However, one must read all of § 2251(a) to understand what it addresses. The Court again reproduces the text, but with bracketed numerals and line breaks for ease of reference:

> [1] Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e),
>
> [2] if such person knows or has reason to know that such visual depiction will be transported or transmitted using any

means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed,

[3] if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer,

[4] or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

If the statute stopped at the end of clause 2, Holt's argument—*i.e.*, that the statute does not prohibit production—would have more force. And that is essentially how the statute read when enacted in 1977, although the statue also included substantially what is now clause 4 as an alternative to clause 2. *See* Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, § 2(a), 92 Stat. 7.

In 1998, however, Congress added clause 3, requiring a "visual depiction [that] was produced or transmitted" (past tense) using articles that had moved in interstate or foreign commerce, and then reconfigured clause 4 (already phrased in past tense) as an alternative to clause 3, not clause 2. Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, § 201(a), 112 Stat. 2974. Accordingly, the statute, as amended, requires production, not just certain steps potentially leading to production.[8] The likelihood of convincing this Court or the Tenth Circuit otherwise was essentially

---

[8] Holt questions whether clause 3 is a valid or effective "jurisdictional hook." (ECF No. 134 at 25–28.) The Tenth Circuit avoided that issue because it concluded that producing child pornography has a substantial impact on interstate commerce, meaning that an explicit jurisdictional hook is not necessary. *Jeronimo-Bautista*, 425 F.3d at 1273 n.4. The point for the present analysis, however, is that clause 3—whether or not it adds anything jurisdictionally— makes clear that a visual depiction must result, and the mere intent to make one is not enough (unless covered by doctrines such as attempt or conspiracy).

nil.[9]

Thus, Holt's counsel did not perform below an objective standard of reasonableness in failing to advise Holt to pursue this argument instead of accepting the plea offer. Indeed, it may have been objectively unreasonable to *give* such advice. But Holt's Ground One fails in any event.

**D.    Ground Two: Ineffective Assistance of Counsel Based on Counsel's Failure to Challenge the Sufficiency of the Evidence Supporting the Guilty Plea**

Holt's next argument turns on the clause of § 2251(a) specifying the *mens rea* connected to the acts of employing, using, persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct—namely, that the defendant acted "for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct." Holt contends that "there was no evidence brought forth by the prosecution that would support" a jury verdict against him on this element. (ECF No. 110 at 5.) Therefore, he says, "Counsel's failure to grasp this element of central importance caused the petitioner to enter a constitutionally invalid plea because the plea was not entered into knowingly nor intelligently, therefore, it was an involuntary plea." (*Id.*)

Given that Holt has brought an ineffective assistance of counsel claim, the Court must construe this to mean that counsel should have advised Holt to reject the guilty plea and go to trial because the Government could not meet its burden on the "for the

---

[9] Holt cites an unpublished extra-circuit decision for the notion that § 2251(a) does not prohibit production. *See Smith v. United States*, 2015 WL 9484522, at *1 (W.D. Wis. Dec. 29, 2015) ("In the motion for clarification, petitioner complains that the court did not cite any provision in 18 U.S.C. 2251(a) that prohibits the production of a visual depiction of sexually explicit conduct involving a minor. . . . The statute does not require that an actual depiction of a live visual depiction be made; it requires only that the listed acts be taken for that purpose." (citation omitted)). The Court disagrees with *Smith*. Clause 3, together with reconfigured clause 4, plainly require production.

purpose of" element of the § 2251(a) claims. As explained above (Part III.B), prejudice to Holt could conceivably exist here because the maximum sentence he could receive from the single remaining count of the indictment (the distribution count) is 40 years, which is less than the 55 he actually received as a result of the plea deal. The Court therefore turns to whether counsel performed deficiently and/or whether Holt truly suffered prejudice.

To begin, Holt provides no basis for finding that his counsel "fail[ed] to grasp" the element (ECF No. 110 at 5)—*i.e.*, that his counsel did not recognize that the element existed, or did not understand it. In this respect, Holt's accusation appears to be a backwards inference solely from the fact that counsel did not provide the advice Holt believes should have been provided. But resolving whether Holt's counsel understood the element is not necessary to the Court's analysis because the question is whether a lawyer who *does* understand the element would be constitutionally deficient by not recommending going to trial. If a properly informed lawyer could reasonably recommend taking the plea deal over going to trial, a defendant cannot show prejudice from an improperly informed lawyer who provided the same advice.

The question, then, is the basis for counsel's advice. Put slightly differently, what circumstances existed such that it was beyond the reasonable bounds of advocacy and attorney judgment to recommend anything other than going to trial on the theory that the Government would fail to prove the "for the purpose of" element?

Holt's theory—explained for the first time, as far as the Court can tell, in his reply in support of his § 2255 motion—is that he "told his co-defendant, on numerous occasions, that he did not want his co-defendant to take any pictures nor send any pictures to him." (ECF No. 134 at 36.) He implies that he sent these instructions in text

19

messages that the Government possesses but has not disclosed:

> The copies of text messages received by the petitioner [apparently referring to discovery documents he received from his counsel or the Government] do not include these messages but there are many pages of messages that are missing. The co-defendant was repeatedly told that she was not to take or send any pictures, but it is believed that there are more examples of similar messages that would bolster this claim.

(*Id.*)

The passive voice Holt employs here ("it is believed that . . .") is suspiciously vague, but that is ultimately irrelevant. For purposes of ineffective assistance of counsel, the question is whether Holt *told his attorney* about (a) his allegedly repeated instructions to his co-defendant not to take pictures and/or (b) the existence of text messages that would support this defense. On this score, Holt is silent, and so the Court must presume the answer is "no." Holt's attorney cannot be deemed constitutionally ineffective for failing to act on information that he never knew or had reason to know. *Premo v. Moore*, 562 U.S. 115, 125 (2011) ("habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel").

To the extent Holt means to imply that his attorney never advised him of the elements in a way that would have prompted Holt to disclose this information, the Court rejects the implied argument. The Court has already rejected Holt's claim that his attorney forced him to admit to matters against his will. (Part III.A, above.) Therefore, it remains a matter of record that Holt willingly answered "yes" when the undersigned asked if he "had these minors engage in sexually explicit conduct * * * for purposes of creating a visual depiction of them engaging in sexually explicit conduct." (ECF No. 115

at 8.)  Thus, it is facially incredible that, with allegedly better advice, Holt would have disclosed to his lawyer his current theory about instructions not to take pictures, confirmed by text messages the Government failed to disclose.

That said, Holt might still have a claim that he would never have confessed the "for the purpose of" element to the Court but for allegedly bad advice to plead guilty.  In other words, Holt could still argue that his confession at the change-of-plea hearing was the only possible evidence of his guilt on this element, which evidence the Government never would have obtained but for Holt's counsel's advice to take the plea deal.

Framed this way, Holt's claim still fails.  Holt recognizes that proving a person's state of mind usually requires "examin[ing] circumstantial evidence."  (ECF No. 134 at 34.)  He then argues that there was no circumstantial evidence in his case similar to the evidence found sufficient to uphold the conviction in certain other reported appellate decisions.  (*Id.* at 34–37.)  But that ignores the evidence available to the Government in *this* case.  Holt spent 15 minutes during the change-of-plea hearing reviewing the allegations the Government believed it could prove at trial, as described in the plea agreement.  (ECF No. 115 at 7 (referring to ECF No. 62 at 11–24).)  The undersigned then asked if he agreed that those allegations "you have just reviewed are true," to which Holt responded, "I do."  (*Id.*)  And he denied the existence of "any inaccuracy . . . that you would like to correct at this time."  (*Id.*)  Judge Wang succinctly summarized much of that evidence:

> Mr. Holt used a minor to produce pornographic images and videos at the Westminster residence; . . . Mr. Holt created a "Shareza" profile that indicated his desire to Skype with other parents and their minor children engaged in sexually explicit conduct; . . . Mr. Holt video recorded Skype conversations with his co-defendant, wherein his co-defendant engaged in sexually explicit conduct with a minor; . . . Mr. Holt admitted

> to producing hundreds of videos and images of he and/or his co-defendant engaging in sexually explicit conduct with minors and that he stored those visual depictions on his cell phone, laptop computer, and an external hard drive; and . . . Mr. Holt vacationed with his co-defendant in Colorado Springs and . . . several images and videos from that trip depict Mr. Holt engaged in sexually explicit conduct with minors.

(ECF No. 145 at 13–14.)  The Court further notes that these allegations, and more, are largely supported by Holt's videotaped confession to law enforcement after waiving his *Miranda* rights.  (*See* ECF No. 62 at 11–24.)

Even if Holt were willing to take the stand at trial and explain to the jury his claim that he instructed his co-defendant not to create pictures (he does not say he would take the stand), and even if text messages exist that support this claim, the question is whether it would be below objective standards of reasonableness for his attorney to still recommend taking the plea deal instead of going to trial.  As a matter of law, such advice would not fall below an objective standard of reasonableness.  The Government had strong evidence that Holt wanted to create visual depictions of his and his co-defendant's "reprehensible behavior" (as Holt generously puts it).  (ECF No. 134 at 32.) It would not be below the competence expected from defense attorneys to advise that a jury could accept the Government's evidence and disbelieve Holt's story—and therefore, that the plea deal was the better alternative.

For these reasons, Holt's Ground Two fails.

## E.   Ground Three: Ineffective Assistance of Counsel Based on Counsel's Failure to Move to Suppress Evidence or Statements Obtained in Violation of the Fourth Amendment

Holt's next ground for relief argues that his counsel was ineffective for failing to bring Fourth Amendment challenges to the various warrantless and warrant-authorized

searches that yielded inculpatory evidence. (ECF No. 110 at 6–7; ECF No. 134 at 38–40; ECF No. 144.) *Cf. Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (failure to move to suppress is potentially ineffective assistance of counsel, although it "does not constitute *per se* ineffective assistance of counsel"—both *Strickland* elements must still be satisfied).

One of the warrants in question—for the home where police discovered digital devices containing the child pornography that formed the basis of this prosecution—has yet to be placed in the record. The Court obtained a copy from the Government and attaches it to this Order.[10] The Court will cite it as "Warrant."

The Court will address Holt's Fourth Amendment-based challenges in the order that the searches or alleged searches occurred.

1.    The IP Address

The investigation that led to Holt's arrest began when a Larimer County child exploitation task force obtained child pornography through a peer-to-peer file sharing network. (Warrant at 3–4.) Law enforcement officials determined the IP address of the computer on the other end of the peer-to-peer connection, learned that it was associated with a Comcast subscriber, and subpoenaed Comcast to disclose the physical address associated with the IP address. (*Id.* at 4–5.) Comcast responded with the street address of 6251 West 111th Avenue, Westminster, Colorado. (*Id.* at 5.) This turned out to be the home of Wayne Larsen (*id.* at 7), father of Holt's co-defendant, in whose basement Holt and his co-defendant had a bedroom.

Holt briefly argues that whatever method law enforcement officials used to

---

[10] Holt previously received his own copy. (*See* ECF No. 144 at 6–8 (making arguments with reference to specific details of the Warrant).)

determine the IP address was undertaken without a warrant and therefore an invasion of privacy against which the Fourth Amendment protects. (ECF No. 144 at 5; ECF No. 148 at 11–12.)[11] But, as Judge Wang points out (ECF No. 145 at 17), the Tenth Circuit has held that Internet subscribers do not have a reasonable expectation of privacy in their IP addresses, particularly when they join peer-to-peer networks and thus make their IP addresses visible to others on the same network. *See United States v. Perrine*, 518 F.3d 1196, 1204–05 (10th Cir. 2008).

Thus, Holt necessarily argues that his attorney was constitutionally ineffective for failing to recommend rejecting the plea agreement in favor of filing a motion that would inevitably fail at the district court level and could only succeed by convincing the Tenth Circuit, in its discretion, to revisit *Perrine* en banc *and* to overturn it, or to convince the Supreme Court, in its discretion, to take the case *and* reverse the Tenth Circuit. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We are bound by the precedent of prior panels absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court."). To state the argument is to refute it. Holt's counsel was not constitutionally ineffective for failing to make such a recommendation.

### 2. Search Warrant for Westminster Residence

The information from Comcast formed the basis of a warrant that Westminster police obtained in Colorado state court to search Wayne Larsen's home, *i.e.*, the Warrant attached to this Order.

#### a. *Particularity*

Holt invokes the Fourth Amendment's "particularity requirement," italicized below:

---

[11] Holt does not argue that the request to Comcast was itself a Fourth Amendment violation without a warrant, but only that the request and Comcast's answer were "fruit of the poisonous tree." (*See* ECF No. 144 at 5.)

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*.

The purpose of the particularity requirement is to prohibit "the 'general warrant' abhorred by the colonists" and thereby prevent an "exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985).

A motion challenging a warrant as a "general warrant" is difficult to win. As to whether warrant language is insufficiently particular, the relevant case law puts a heavy thumb on the Government's side of the scale. *See, e.g.*, *United States v. Ortega-Jimenez*, 232 F.3d 1325, 1328 (10th Cir. 2000) ("When interpreting warrants, this court has adopted a standard of practical accuracy rather than technical precision." (internal quotation marks omitted)); *United States v. Le*, 173 F.3d 1258, 1272 (10th Cir. 1999) ("even warrants phrased in generic terms can, under some circumstances, still allow the executing officers to distinguish between items that may and may not be seized" (internal quotation marks omitted)); *see also United States v. Leary*, 846 F.2d 592, 603 (10th Cir. 1988) (potentially overbroad warrant may be narrowed by the affidavit supporting the application for the warrant if the application is attached and incorporated by reference); *Ortega-Jimenez*, 232 F.3d at 1329 (even where affidavit is not attached to and incorporated by reference in the warrant, the task of giving the warrant a practical interpretation may still be informed by the affidavit if "the same officer both produced the

affidavit and executed the warrant").

Assuming the movant can nonetheless convince the court that some language in the warrant is insufficiently particular, the movant must then convince the court that the offending language cannot be severed from the remainder of the warrant. *See, e.g.*, *United States v. Sells*, 463 F.3d 1148, 1155 (10th Cir. 2006) (under "the doctrine of severance," "valid portions of a warrant are severed from the invalid portions and only materials seized under the authority of the valid portions, or lawfully seized while executing the valid portions, are admissible"); *United States v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993) ("To make the severability doctrine applicable the valid portions of the warrant must be sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant.").

Finally, if the warrant is non-severable, the Government still prevails as long the officers who executed the warrant relied in good faith on the fact that a judge had approved the warrant. *See, e.g.*, *United States v. Robertson*, 21 F.3d 1030, 1034 (10th Cir. 1994) ("Even if the warrant was not specific enough, the court should not suppress the evidence because the agents seized it in objectively reasonable reliance on the warrant.").

In this light, it was not below an objective standard of reasonableness for Holt's counsel to advise taking the plea deal rather than rejecting it and instead bringing a particularity challenge to the Warrant. The Warrant is, contrary to Holt's view (*see* ECF No. 144 at 7–8), highly particular. In addition to authorizing a search for "[i]mages or visual depictions of child pornography," it authorizes a search for items whose relevance to an Internet-age child pornography investigation is obvious on their face, *e.g.*, "[a]ny and all diaries, address books, names, and lists of names and addresses of individuals

who may have been contacted by use of the computer or by other means for the purpose of committing violations of CRS 18-6-403, Sexual Exploitation of Children"; "[a]ny and all information, records, documents, invoices and materials, in any format or medium that concern any accounts with an Internet Service Provider"; and "[c]redit cards, credit card information, including, but not limited to, bills and payment records pertaining to violations of CRS 18-6-403, Sexual Exploitation of Children." (Warrant at 14.)

The only portion of the Warrant not connected in some obvious way to a child pornography investigation is the authorization to search "[a]ny and all out buildings and vehicles located at [the address]." (*Id.*) But this is one item among many, and it would be well within the competence expected of defense counsel to predict that the best his client could reasonably hope for was an order finding that single line item excessively general and then severing it, thus suppressing anything incriminating found in outbuildings and vehicles—which, to the Court's knowledge, is nothing.

In short, Holt's counsel was not constitutionally ineffective by failing to recommend bringing a particularity challenge rather than accepting the plea deal.

        b.    *Holt's "Visitor" Status*

Holt argues that his counsel was ineffective for failing to raise the fact that he was "a guest in [Wayne Larsen's] home" and therefore "had a legitimate expectation of privacy." (ECF No. 144 at 2.) He primarily cites *Minnesota v. Olson*, 495 U.S. 91 (1990), in which the Supreme Court held that an overnight guest had a legitimate expectation of privacy in his host's home, and therefore had standing to challenge the police's decision to enter the host's home *without a warrant* and arrest him. *Id.* at 95–100. Because police entered Wayne Larsen's home with a warrant, *Olson* is

inapplicable.

If Holt means to say that his "visitor" or "guest" status means that the police needed a warrant specifically to search the basement bedroom he shared with his co-defendant, he is incorrect. Only when police know beforehand that a residence is a multi-unit residence must the police specify in a warrant application which portion of the residence they intend to search. *See* 2 Wayne R. LaFave, *Search & Seizure* § 4.5(b) nn.72–78 and accompanying text (5th ed., Oct. 2018 update) (discussing this principle as first expounded in *United States v. Santore*, 290 F.2d 51 (2d Cir. 1959)). If police enter and then realize that what appeared to be a single residence is actually multiple residences (or, accepting *arguendo* Holt's characterization of himself as a visitor, contains multiple occupied guest rooms), the police may press forward with a search as authorized in the warrant, including rooms claimed by non-owners. *Id*. Holt offers no reason to think that Wayne Larsen's home appeared to the police to be anything but a normal single-family residential home.[12]

Moreover, if Holt was a resident (as he currently denies, contradicting his plea agreement, *see* ECF No. 11, 14, 22), then the police were similarly justified:

> Another type of case often dealt with differently than the usual multiple-occupancy situation is that in which several persons or families occupy the premises in common rather than individually, as where they share common living quarters but have separate bedrooms. In the community-occupation situation, the courts have held that a single warrant describing the entire premises so occupied is valid and will justify search of the entire premises.

---

[12] The Court takes judicial notice, via Google Maps, that 6251 West 111th Avenue, Westminster, is situated in a typical single-family neighborhood and outwardly appears to be a single-family home.

2 *Search & Seizure* § 4.5(b) n.82 and accompanying text.[13]

In short, Holt's status, whether as a visitor, guest, resident, or something else, did not limit the police's power to search Wayne Larsen's entire home, given that the search warrant authorized as much.

      3.    The Government's Warrants to Search the Digital Devices and to Obtain GPS Data

Upon learning what Westminster police discovered in Wayne Larsen's home, federal agents obtained warrants from this Court to search the contents of the digital devices seized by Westminster police, and also to obtain GPS data from a GPS tracker installed on Holt's vehicle by the entity financing its purchase. (*See* ECF No. 118 at 14–16.) Holt, apparently unaware that these warrants existed, originally argued that his counsel failed to move to suppress based on warrantless searches. (ECF No. 134 at 38–40.) The Recommendation describes the warrants and so rejects this argument. (ECF No. 145 at 15–18.) Holt does not object to this analysis beyond claiming "a possible due process violation" because he does not possess copies of the warrants. (ECF No. 148 at 9–10.) His invocation of due process has nothing to do with the merits of the Recommendation. Having failed to object, the Court need only review for clear error, and finds none.

---

[13] Holt points the Court to *State v. Brown*, 905 N.W.2d 846 (Iowa 2018), where the Iowa Supreme Court held that Iowa's state constitutional equivalent to the Fourth Amendment prohibited police, while executing a search warrant on a home, from immediately searching within a purse apparently belonging to a guest in the home. *Id.* at 847, 851–56. The Iowa Supreme Court's interpretation of Iowa's equivalent of the Fourth Amendment is, at best, marginally persuasive as to the interpretation of the federal Fourth Amendment. In any event, it is not clear that the Westminster police immediately searched Holt's digital devices on site in a manner equivalent to the purse search in *Brown*—they instead *seized* the digital devices, and federal authorities searched them only later, after having obtained a federal warrant to do so.

4.   <u>Synthesis</u>

The Court has analyzed whether it was constitutionally ineffective to fail to recommend filing any of the particular motions to suppress that Holt believes should have been filed.  Holt may be arguing, however, that the effect of filing all of these motions could have been greater than the sum of the parts.  To the extent this is Holt's argument, the Court disagrees.  It was well within the competence of defense counsel to predict that each motion's weaknesses would quickly become apparent and so filing all of them would gain nothing but delay.

Holt's Ground Three fails for all of these reasons.

**F.   Ground Four: Ineffective Assistance of Counsel Based on Counsel's Failure to Bring a Double Jeopardy Challenge**

Holt's final claim is that his counsel was ineffective for failing to bring a Double Jeopardy challenge against the indictment's twelve separately charged violations of § 2251(a).  (ECF No. 110 at 8; ECF No. 134 at 40–45.)  Prejudice in this context is less clear because such a challenge, if successful, would have left one production count and one distribution count for trial, with a potential combined sentence of 70 years to life— much more than the 55 years Holt actually received.  But the Court will assume prejudice for purposes of this analysis because Holt's attorney was not constitutionally ineffective as a matter of law.

The Tenth Circuit holds that "each use of a minor to create a visual depiction constitutes a separate and distinct violation [of § 2251(a)], and thus represents the correct unit of prosecution."  *United States v. Esch*, 832 F.2d 531, 541 (10th Cir. 1987).  Thus, each illegal photograph may be prosecuted as a separate count.  "The fact that multiple photographs may have been sequentially produced during a single

photographing session is irrelevant. Each photograph depended upon a separate and distinct use of the children." *Id.* at 542.

Here, the indictment complied with *Esch*. (*See* ECF No. 13.)[14] So Holt's only hope was to attack *Esch*. In this light, Holt necessarily argues that his attorney was constitutionally ineffective for failing to recommend rejecting the plea agreement in favor of filing a motion that would inevitably fail at the district court level and could only succeed by convincing the Tenth Circuit, in its discretion, to revisit *Esch* en banc *and* to overturn it, or to convince the Supreme Court, in its discretion, to take the case *and* reverse the Tenth Circuit. *See Smith*, 10 F.3d at 724. As before, to state the argument is to refute it. Holt's counsel was not constitutionally ineffective for failing to make such a recommendation.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  The Magistrate Judge's July 9, 2018 Recommendation (ECF No. 145) is ADOPTED IN FULL as modified above;

2.  Holt's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 110) is DENIED;

3.  Holt's Motion to Strike (ECF No. 152) is DENIED AS MOOT; and

4.  Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court has considered whether a certificate of appealability is appropriate, and hereby ORDERS that no certificate of appealability will issue because Holt has

---

[14] The indictment is actually generous toward Holt in this regard. It groups the various counts by date, regardless of the number of images produced on that date. For example, Count Three enumerates four distinct illegal videos created by Holt and his co-defendant on May 27, 2014. (*Id.* at 3.) Consistent with *Esch*, the Government likely could have broken Count Three into four counts.

not made a substantial showing that jurists of reason would find it debatable whether his motion states a valid claim of the denial of a constitutional right.

Dated this 14th day of January, 2019.

BY THE COURT:

William J. Martinez
United States District Judge